Sandra Joy Holstein v. Commissioner.
Holstein v. Commissioner
Docket No. 373-70.
United States Tax Court
T.C. Memo 1970-348; 1970 Tax Ct. Memo LEXIS 9; 29 T.C.M. (CCH) 1687; T.C.M. (RIA) 70348; December 24, 1970, Filed Robert E. Oliphant, University of Minn. Law School, Minneapolis, Minn., for the petitioner. Tom G. Parrott, for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: Respondent determined a deficiency of $96.90 in petitioner's Federal income tax for the year 1967. Petitioner has conceded that $327.70 of the $678 she claimed as an educationjl expense on her 1967 Federal income tax return was properly disallowed by respondent. The only issue presented for decision is whether the petitioner is entitled to deduct under section 162(a), Internal Revenue Code of 1954, and section 1.162-5, Income Tax Regs., as amended in T.D. 6918, 1967-1 C.B. 36, expenses of $350.30 incurred in taking graduate courses while *10 serving as a graduate teaching assistant during 1967 in the English Department at the University of Minnesota. All of the facts have been stipulated. The stipulation of facts and supplemental stipulation of facts, together with the attached exhibits, are incorporated herein by this reference and are adopted as our findings. The pertinent facts are set out below. Sandra Joy Holstein (maiden name, Moss), who will be referred to herein as the petitioner, was a legal resident of Minneapolis, Minnesota, at the time she filed her petition in this proceeding. She filed her Federal income tax return for the year 1967 with the district director of internal revenue at St. Paul, Minnesota. Petitioner received a Bachelor of Arts degree from the University of California at Los Angeles in 1965. On February 8, 1965, petitioner submitted an application for admission to the Graduate School at the University of Minnesota (herein referred to as the University). On February 8, 1965, petitioner submitted an application for "any applicable fellowship, scholarship or assistantship" in the English Department at the University. In the space provided for a statement of the applicant's immediate and *11 long-range occupational objectives on both the application for Graduate School and the application for a fellowship, assistantship or scholarship, petitioner stated, in part, "My main interest is the study of English and American literature, a study I hope to mold and develop beyond an interest until it forms the core of my life as a college professor." The printed instructions at the top of the application for fellowship, assistantship or scholarship, submitted by petitioner inform the applicant, in part, that "Admission to the Graduate School is a prerequisite to the granting of an assistantship, fellowship or scholarship." Petitioner was appointed as a graduate teaching assistant in the English Department at the University in September 1965. This appointment was on the basis of 40 percent of full-time service and covered the period from September 16, 1965, to June 15, 1966. Petitioner was reappointed as a graduate teaching assistant in the English Department in March 1966. This appointment was on the basis of 50 percent of full-time service and covered the period from March 16, 1966, to June 15, 1966. Petitioner was serving under an appointment as a graduate teaching assistant *12 in the English Department at the University during the school year 1966-1967. This appointment was on the basis of 50 percent of full-time service. On June 15, 1967, petitioner resigned from her position as a graduate teaching assistant in the English Department at the University. The reason stated on the University record for petitioner's resignation was that she "is resigning in order to devote full time to graduate work." Petitioner was reappointed as a graduate teaching assistant in the English Department at the University in December 1967. This appointment was on the basis of 50 1688 percent of full-time service and covered the period from December 16, 1967, to March 15, 1968. During the year 1967 the petitioner was a candidate for the Doctor of Philosophy degree in English and was enrolled as a graduate student at the University. The minimum educational requirements for the position of a regular full-time faculty member in the English Department of the University during 1967 was a Doctor of Philosophy degree. All freshman English courses at the University were taught by graduate teaching associates during the year 1967. Approximately 260 graduate teaching associates *13 teach about 4,000 freshman students. Graduate teaching associates in the English Department also select the textbooks used in freshman English courses at the University. Graduate teaching assistants and associates in the English Department elect two representatives to represent them at English Department faculty meetings. These representatives vote on all matters pertaining to the English Department, except hiring and tenure matters. Graduate teaching assistants in the English Department are invited to attend all general English Department meetings. Petitioner kept regular office hours in the English Department during 1967 and counseled freshman English students. She graded about 400 freshman essays and 200 freshman examinations during 1967. The Department of English at the University could not conduct its teaching activities without the employment of teaching assistants and associates. The duties of a graduate teaching assistant in the Department of English at the University, during the year 1967, were to attend classes taught by a senior professor, to assist that senior professor as an examination and term paper grader, to act as a substitute for the professor in conducting *14 classes if he is unavailable, to act as a counselor of students enrolled in the classes, and to lead discussion groups in upper division English courses. All lectures in freshman English courses, and in virtually all advanced composition courses, are prepared and delivered by graduate teaching associates in the English Department at the University. All lectures in upper division courses, with the occasional exception of English 55 and 56 (Shakespeare) and English 72, 73 and 74 (American Literature), are prepared and delivered by the permanent, full-time faculty members in the Department of English. No classroom lectures are prepared or delivered by graduate teaching assistants in the Department of English, except on a substitute basis. Occasionally, tenure professors in the English Department at the University teach on a part-time basis. During the year 1967 the minimum educational requirements for the position of graduate teaching assistant in the English Department was a B.A. degree with a major in English. A majority (eight of eleven) of the members of the Freshman English Advisory Committee of the English Department, which has full administrative responsibility for the *15 planning of the freshman English courses, consists of teaching associates. Petitioner applied, simultaneously, in the winter of 1964-65, while an undergraduate senior at U.C.L.A., for admission to the graduate schools at U.C.L.A., University of California at Berkeley, and the University of Minnesota, and for an appointment as a teaching assistant at the University of Minnesota. She was admitted to the graduate school at Minnesota and given an appointment as a teaching assitant at Minnesota before her graduation from U.C.L.A. in September 1965. She was informally assured that she could retain staff employment at the University of Minnesota as a teaching assistant for two years, and thereafter as a teaching associate, until she completed her work for the Ph. D. degree in English. During the academic years 1965-66, 1966-67 and 1967-68, she served as a teaching assistant in English at the University of Minnesota. During the academic years 1968-69 and 1969-70, she served as a teaching associate. She was admitted to the graduate schools of U.C.L.A. and the University of California at Berkeley, but chose to come to the University of Minnesota because of the staff position offered to her. *16 The graduate department in the English Department at the University normally recruits talented out-of-State undergraduate students to do graduate work in English at the University by offering staff positions to them on the terms of the Department's offer to petitioner. Teaching assistants and associates who adequately perform their 1689 duties (which includes virtually all of those appointed) continue as teaching assistants and associates throughout their period of enrollment in the graduate school, normally until they complete their work for the Ph. D. degree. The average period of time during which such staff members remain employed by the English Department is six or seven years, the range being from four to ten years. Teaching assistants in the English Department at the University grade all undergraduate English written examinations and term papers, including those in courses leading to the B.A. degree in English, except Freshman English examinations, which are graded by the teaching associates who conduct Freshman English classes. Professors routinely accept the grading of these teaching assistants as final grades. Professors of English routinely grade only graduate students' *17 examinations and papers. During the winter and spring quarters of the academic year 1966-67, petitioner was a teaching assistant in the Sophomore English Survey Course, a course in the English major sequence. She had sole responsibility for grading all mid-semester examinations and all term papers in such course. Seventy students were enrolled in this course. This was petitioner's first year as a teaching assistant in an upper class course in the major sequence. During the preceding academic year she had a one-third time appointment as teaching assistant and a one-sixth time appointment as research assistant. During the academic years 1968-69 through 1969-70, she held a two-thirds time appointment as teaching associate in English, with full responsibility for conducting classes and grading two sections of Freshman English (there were twenty-eight students in each section). During the academic year 1966-67, she also performed counseling duties for the students enrolled in the English Survey Course in which she was teaching assistant. Petitioner's career objective in applying for admission to the Graduate School at the University and for appointment to the staff as a teaching assistant *18 was to engage in, and to prepare herself further for, a career as a college English teacher. During the year 1967 an individual was required to be enrolled in or approved for admission to the Graduate School at the University before he could hold an appointment as a graduate teaching assistant. A graduate teaching assistant at the University during 1967 was required to be making satisfactory progress toward a graduate degree each academic quarter that he held an appointment in that capacity. A graduate teaching assistant at the University during 1967 was required to pay fees for enrollment in the Graduate School at the beginning of each of the academic quarters before he became eligible to receive his first payroll check for the services rendered as a graduate teaching assistant. Appointments to positions of graduate teaching assistant were designated by the University as "non-regular." Such appointments were regarded as temporary positions because they were not established in the University's on-going budget and were not funded on a continuing basis. Each non-regular appointment at the University during 1967 was a single and indivisible contract. No number of appointments *19 or reappointments to any non-regular position at the University during 1967 created any presumption of a right to reappointment or to indefinite tenure. Non-regular appointments at the University during 1967 terminated at the end of the period of appointment. The term "non-regular" appointment refers to the permanence of the faculty position rather than the senior status of the faculty. Thus, nationally renowned full time professors at other colleges and universities who are teaching at the University of Minnesota while on leave from other colleges or universities are "non-regular" faculty members at the University, as are a number of associate professors and assistant professors who are initially employed on special contracts for a term of two or three years, except that the latter may be eligible for some benefits. Teaching assistants and associates have "regular payroll" appointments at the University. The amount of service required of an individual serving under an appointment as a graduate teaching assistant at the University during 1967 ranged from one-fourth to three-fourths of full-time service. All appointments as graduate teaching assistants at the University during *20 1967 served the dual purpose of providing financial aid to graduate students and of providing the members of the regular faculty with assistants. A graduate teaching assistant at the University during 1967 was not granted tenure, nor were his years of service in that capacity counted toward obtaining tenure. 1690 A graduate teaching assistant at the University during 1967 was not eligible to participate in the following plans provided for "egular members of the faculty: Group Life Insurance Plan, Group Income Disability Insurance Plan, and Faculty Retirement Plan. A graduate teaching assistant at the University during 1967 was not eligible for coverage under the Old Age, Survivors, and Disability Insurance of the Federal Social Security Act. The position of graduate teaching assistant was below the rank of Instructor or Research Fellow on the academic staff at the University during 1967. Appointments for the position of graduate teaching assistant are usually made only for a term of one school year. If a graduate teaching assistnat makes satisfactory progress in his job and makes satisfactory progress toward obtaining a graduate degree, his appointment will usually be *21 renewed if sufficient funds are available to the University. The maximum period during which a person could retain an appointment as a graduate teaching assistant at the University during 1967 varied from three to five years, depending upon the department of the University in which the graduate teaching assistant worked. Only a very small percentage of the graduate teaching assistants employed by the University obtain employment as regular full-time teachers or faculty members at the University. Most of them who become regular full-time teachers or faculty members obtain employment at a college, university or educational institution other than the University of Minnesota. Employment as a graduate teaching assistant at the University is a helpful qualification for a person seeking employment as a regular full-time teacher or faculty member at the college or university level. The University Senate at the University was the voice of the faculty during 1967. It had legislative control over educational matters concerning the University as a whole. Graduate teaching assistants at the University during 1967 did not have a vote in the University Senate. Faculty housing projects and *22 faculty homesites, which were made available to regular faculty members at the University, were not made available to graduate teaching assistants during 1967. Graduate teaching assistants at the University during 1967 were not eligible for membership in the following faculty clubs: The Campus Club, The Faculty Women's Clubs, and The Faculty Dancing Club. The four classes of regular faculty positions at the University during 1967 were: Professor, Associate Professor, Assistant Professor (including Research Associate), and Instructor (including Research Fellow). All other positions at the University during 1967 which were concerned with teaching research and other academic services were "non-regular" positions. Registration in the Graduate School at the University required the payment of tuition and fees, and the purchase of books, which the petitioner incurred during 1967 in the amount of $350.30. Petitioner claimed such amount as an ordinary and necessary business expense on her Federal income tax return for 1967. Respondent disallowed the claimed deduction in his notice of deficiency dated November 10, 1969. The issue herein identical to that presented in Arthur M. Jungreis, *23 55 T.C. -, decided this day. Although there are minor and inconsequential variations between the facts of these two cases, the conclusions and principles announced in the Jungreis opinion are equally applicable to this situation. The same contentions made in this case were considered in Jungreis. No useful purpose would be served by repeating them. The result is no different. Accordingly, we hold that the petitioner has failed to meet her burden of establishing her right to an educational expense deduction under either section 1.162-5(a)(1) or (a)(2) of the 1967 regulations. We further hold that the education undertaken by the petitioner at the University was required in order to meet the minimum educational requirements for qualification of establishment in her intended trade or business of being a teacher or professor at the college or university level. Decision will be entered for the respondent. 1691